# ILLINOIS CENTRAL · RAILROAD COMPANY *v.* STATE PUBLIC UTILITIES COMMISSION OF ILLINOIS ET AL.

# STATE PUBLIC UTILITIES COMMISSION OF ILL-INOIS ET AL. *v.* UNITED STATES ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 416, 448.   Argued October 8, 9, 1917.—Decided January 14, 1918.

Suits brought by carriers to restrain state officials from interfering with the establishment and maintenance of intrastate rates which the carriers have adopted in pursuance of an order of the Interstate Commerce Commission requiring the removal of discrimination against interstate commerce, are not suits to "enforce" the order in the sense of the jurisdictional provision of the Act of October 22, 1913, c. 32, 38 Stat. 219, and need not be brought in the district "wherein is the residence of the party or any of the parties upon whose petition the order was made."   They come within the provision in § 1 of the Act of June 18, 1910, c. 309, 36 Stat. 539, repeated in Jud. Code, § 207, by which the general jurisdiction over cases not therein enumerated is preserved.

In such a suit neither the United States nor the Commission is a necessary party, either by statute or under the rules governing suits in equity.

As, by the jurisdictional provision of the Act of October 22, 1913, *supra*, a suit to set aside an order of the Commission, relating to transportation and made upon petition, may be brought only in the district of the petitioner's residence, and as the United States has not consented to be thus impleaded in any other district, and its immunity from suit recognizes no distinction between cross and original bills, or ancillary and original suits, it follows that the District Court of another district, in a suit by a carrier against state officials in aid of such an order, cannot entertain a cross bill seeking to have the order declared void and to enjoin the United States and the Commission from enforcing it and the carrier from complying with it.

Nor may such cross bill be entertained as against the Commission and the carrier only; under Jud. Code, §§ 208, 211, the United States is a necessary party, as the representative of the public.

When, in the exercise of the power constitutionally reposed in it by the Act to Regulate Commerce, the Commission finds that a disparity in interstate and intrastate rates is resulting in unjust discrimination against interstate commerce, and also determines what are reasonable rates for the interstate traffic and directs the removal of the discrimination, the carrier is not only entitled to put in force the interstate rates found reasonable but is free to remove the forbidden discrimination by bringing the intrastate rates (though fixed by state authority) to the same level. *The Shreveport Case*, 234 U. S. 342; *Adams Express Co.* v. *Caldwell*, 244 U. S. 617.

In such case, the Commission may make the order as broad as the wrongful discrimination, but the extent of the discrimination found and of the remedy applied must be gathered from the reports and order of the Commission; and, to be effective in respect of intrastate rates established and maintained under state authority, the order must have a definite field of operation and not leave uncertain the territory or points to which it applies. Such an order should not be given precedence over a state rate statute, otherwise valid, unless, and except in so far as, it conforms to a high standard of certainty.

Affirmed.

THESE cross appeals present a controversy over the validity, scope and effect of an order of the Interstate Commerce Commission dealing with discrimination found to result from a disparity in interstate and intrastate passenger rates. The facts and proceedings to be considered are these: The Mississippi River forms the boundary between the States of Missouri and Iowa on the west and the State of Illinois on the east. East St. Louis, in southwestern Illinois, is directly across the river from St. Louis, Missouri, and Hamilton, in western Illinois, is directly across the river from Keokuk, Iowa. At both places the river is spanned by railroad bridges whereby the lines of railroad on one side are connected with those on the other. For some years prior to December 1, 1914, interstate passenger rates between St. Louis and Keokuk on the one hand and points in Illinois on the other were on a sub-

stantial parity with intrastate rates between East St. Louis and Hamilton, respectively, and points in Illinois. All were on a basis of 2 cents per mile, save that the rates to and from St. Louis and Keokuk included a bridge toll over the river. All other rates between points in Illinois were also on the same basis, any intrastate rate in excess of 2 cents per mile being prohibited by a statute of that State. On December 1, 1914, the rates between St. Louis and Keokuk, respectively, and points in Illinois were increased by the carriers to $2\frac{1}{2}$ cents per mile, plus bridge tolls, the parity theretofore existing being thereby broken. Following this increase the Business Men's League of St. Louis, a corporate body of that city engaged in fostering its interests, filed with the Interstate Commerce Commission a petition against the carriers charging that the rates between St. Louis and points in Illinois were unreasonable in themselves, and, in connection with the lower intrastate rates, worked an unreasonable discrimination against St. Louis and in favor of Illinois cities, particularly East St. Louis and Chicago, and a like discrimination against interstate passenger traffic to and from St. Louis and in favor of intrastate passenger traffic to and from East St. Louis and Chicago. An association representing interests in Keokuk, Iowa, intervened and urged that any relief granted with respect to St. Louis be extended to Keokuk, so the former would not have an undue advantage over the latter. The State of Illinois, the Public Utilities Commission of that State, an association representing interests in Chicago and another association representing interests in East St. Louis, also intervened and opposed any action contemplating or requiring an increase in intrastate rates. After a hearing, in which all the parties and intervenors participated, the Interstate Commerce Commission filed a report (41 I. C. C. 13) finding that the existing bridge tolls at St. Louis and Keokuk were unobjectionable, that rates between

either of those cities and points in Illinois were reasonable when not in excess of 2.4 cents per mile, plus bridge tolls, and that the service, equipment and accommodations provided for intrastate passengers to and from East ·St. Louis, Hamilton, and Chicago, were the same as those provided for interstate passengers to and from St. Louis and Keokuk. In that report the Commission also found that the contemporaneous maintenance between East St. Louis [1] and Hamilton,[2] respectively, and other points in Illinois, of rates on a lower basis than those maintained via the same routes between St. Louis and Keokuk, respectively, and the same points in Illinois, bridge tolls excepted, gave an undue preference to East St. Louis and Hamilton and to intrastate passenger traffic to and from the latter points, and subjected St. Louis and Keokuk and interstate passenger traffic to and from those cities to an unreasonable disadvantage; that the existing disparity in interstate and intrastate rates worked an unjust discrimination against St. Louis and in favor of Chicago in so far as the rates between St. Louis and points in Illinois approximately equidistant from those cities exceeded, by more than the bridge toll, the rates between Chicago and the same points; that the disparity worked a like discrimination against Keokuk and in favor of Chicago; and that the existence on the reasonably direct lines of the carriers in the territory between Chicago on the one hand and St. Louis and Keokuk on the other of intrastate rates on a lower basis per mile than the rates between that territory and St. Louis and Keokuk, bridge tolls excepted, operated to subject interstate traffic to an unreasonable disadvantage.

---

[1] The report similarly speaks of other towns across the river from St. Louis, East St. Louis being here mentioned as representative of all.

[2] The report refers to a plurality of points opposite Keokuk, but it suffices here to mention Hamiliton.

The Commission then made an order intended to result in the installation of rates not exceeding 2.4 cents per mile between St. Louis and Keokuk, respectively, and points in Illinois and to remove the discrimination shown in the report; but shortly thereafter the Commission recalled that order and filed a supplemental report (41 I. C. C. 503) indicating that lawful interstate rates between St. Louis and Keokuk on the one hand and Illinois points on the other could be defeated by the use of two tickets, one purchased at the interstate rate for a part of the journey and the other at the lower intrastate rate for the remainder, and therefore that the order should be so framed as to cover the rates between the intermediate points. In this connection it was said that the discrimination against interstate traffic resulting from the lower intrastate rates "would not be removed merely by an increase in the intrastate fares to and from the east bank points," and that "any contemporaneous adjustments of fares between St. Louis or Keokuk and Illinois points, and generally within Illinois, which would permit the defeat of the St. Louis, Keokuk, East St. Louis, or any other east side city fares by methods such as described above, and which would thereby permit the continuance of the undue prejudice which we have found is suffered by St. Louis and Keokuk, and continue to burden interstate commerce," would not comply with the order about to be entered. An order was then made, which is copied in the margin.[1]

[1] The order is dated October 17, 1916, and, omitting the caption, reads as follows:

"*It appearing*, That on July 12, 1916, the Commission entered its report and order in this proceeding, and on the date hereof a supplemental report, which reports are hereby referred to and made a part hereof:

"*It is ordered*, That the said order of July 12, 1916, be, and it is hereby, vacated, and that the following be substituted therefor:

"*It is further ordered*, That the above-named defendants, accord-

In obedience to that order the carriers—of whom there were 29—took the requisite steps to establish and put in force interstate rates on a basis of 2.4 cents per mile between St. Louis and Keokuk, respectively, and points in Illinois, and those rates became effective. Then,

---

ing as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before January 15, 1917, and thereafter to abstain, from publishing, demanding, or collecting passenger fares between St. Louis, Mo., and points in Illinois upon a basis higher than 2.4 cents per mile, bridge tolls excepted, which basis was found reasonable in said report, or higher than the fares contemporaneously exacted for the transportation of passengers between East St. Louis, Ill., and the same Illinois points, by more than a reasonable bridge toll; or fares constructed upon a higher basis per mile, bridge tolls excepted, than fares contemporaneously maintained between Illinois points intermediate between St. Louis, Mo., and points in Illinois, as such fares have been found in said report to be unlawfully discriminatory.

"*It is further ordered*, That the above defendants, according as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before January 15, 1917, and thereafter to abstain, from publishing, demanding, or collecting fares for the transportation of passengers between St. Louis, Mo., and points in Illinois, the basis of which per mile, bridge tolls excepted, is higher than the basis per mile for fares contemporaneously maintained between Chicago and the same Illinois points, as such fares have been found in said report to be unlawfully discriminatory.

"*It is further ordered*, That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before January 15, 1917, and thereafter to abstain, from publishing, demanding, or collecting passenger fares between Keokuk, Iowa, and points in Illinois upon a basis higher than 2.4 cents per mile, bridge tolls excepted, which basis was found reasonable in said report, or higher per mile than the fares contemporaneously exacted for the transportation of passengers between Illinois points directly opposite to Keokuk and the same Illinois points, by more than a reasonable bridge toll; or fares constructed upon a higher basis per mile, bridge tolls excepted, than fares contemporaneously maintained between Illinois points

believing the order required all intrastate rates in Illinois to be on a level with those interstate rates, bridge tolls excepted, the carriers proceeded to establish and put in force new rates between all points in that State on a basis of 2.4 cents per mile. This met with opposi-

---

intermediate between Keokuk, Iowa, and points in Illinois, as such fares have been found in said report to be unlawfully discriminatory.

"*It is further ordered,* That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before January 15, 1917, and thereafter to abstain, from publishing, demanding, or collecting fares for the transportation of passengers between Keokuk, Iowa, and points in Illinois, the basis of which per mile, bridge tolls excepted, is higher than the basis per mile for fares contemporaneously maintained between Chicago and the same Illinois points, as such fares have been found in said report to be unlawfully discriminatory.

"*It is further ordered,* That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to establish and put in force on or before January 15, 1917, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the act to regulate commerce, and thereafter to maintain and apply to the transportation of passengers between St. Louis and points in Illinois fares upon a basis not in excess of the fares between East St. Louis, Ill., and the same points by more than a reasonable bridge toll; nor upon a higher basis per mile, bridge tolls excepted, than fares contemporaneously maintained between Illinois points intermediate between St. Louis and points in Illinois, as such fares have been found in said report to be unlawfully discriminatory.

"*It is further ordered,* That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to establish and put in force on or before January 15, 1917, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the act to regulate commerce, and thereafter to maintain and apply to the transportation of passengers between St. Louis, Mo., and points in Illinois fares, the basis of which per mile, bridge tolls excepted, is not higher than the basis per mile for fares

tion on the part of the state authorities and the carriers severally brought suits against them, in the District Court for the Northern District of Illinois, to enjoin them from interfering, by civil or criminal proceedings, or otherwise, with the establishment and maintenance of such intrastate rates under the Commission's order.

---

contemporaneously maintained between Chicago and those same Illinois points.

"*It is further ordered,* That the above-named defendants, according as they participate in the transportation, be, and they are hereby, notified and required to establish and put in force on or before January 15, 1917, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the act to regulate commerce, and thereafter to maintain and apply to the transportation of passengers between Keokuk, Iowa, and points in Illinois fares upon a basis not in excess of 2.4 cents per mile, bridge tolls excepted, which basis has been found reasonable in the said report, nor in excess per mile of the fares between points in Illinois directly opposite to Keokuk and the same points by more than a reasonable bridge toll; nor upon a higher basis per mile, bridge tolls excepted, than fares contemporaneously effective between Illinois points intermediate between Keokuk, Iowa, and points in Illinois.

"*It is further ordered,* That the above-named defendants, according as they participate in the transporation, be, and they are hereby, notified and required to establish and put in force on or before January 15, 1917, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the act to regulate commerce, and thereafter to maintain and apply to the transportation of passengers between Keokuk, Iowa, and points in Illinois fares, the basis of which per mile, bridge tolls excepted, is not higher than the basis per mile for fares contemporaneously maintained between Chicago and those same Illinois points.

"*It is further ordered,* That said defendants, according as they participate in the transportation, be, and they are hereby, notified and required to cease and desist, on or before January 15, 1917, and thereafter to abstain, from the undue preferences and the undue and unreasonable prejudices and disadvantages found in said report to result from the contemporaneous maintenance between Illinois points of

The suits were consolidated and the present appeals are from decrees dismissing the bills for want of equity and dismissing cross bills of the state authorities for want of jurisdiction.

*Mr. Silas H. Strawn*, with whom *Mr. Robert Bruce Scott* and *Mr. Andrew P. Humburg* were on the briefs, for the railroad companies.

*Mr. Robert Bruce Scott* for Illinois Central Railroad Co.

*Mr. Sydney R. Prince, Mr. Edward C. Kramer* and *Mr. Alexander Pope Humphrey* filed a brief for Southern Railway Co. and Mobile & Ohio Railroad Co.

*Mr. George T. Buckingham* and *Mr. James H. Wilkerson*, Assistant Attorneys General of the State of Illinois, with whom *Mr. Edward J. Brundage*, Attorney General of the State of Illinois, was on the briefs, for State Public Utilities Commission of Illinois *et al.*

*Mr. Joseph W. Folk* for the Interstate Commerce Commission.

*The Solicitor General*, for the United States, submitted upon a brief, contending that the court below had no jurisdiction over the United States and the Interstate Commerce Commission.

---

passenger fares, which fares, in combination with other fares re-required or permitted by this order, would produce the discrimination against interstate commerce and the undue preferences in favor of intrastate commerce condemned in the report of the Commission.

"*And it is further ordered,* That this order shall continue in force for a period of not less than two years from the date when it shall take effect."

.Mr. Justice Van Devanter, after making the fore-
going statement, delivered the opinion of the court.

The questions to which attention is first invited re-
late to the power of the District Court in the Northern
District of Illinois to entertain the suits and the cross
bills, in view of the jurisdictional provision in the Act of
October 22, 1913, c. 32, 38 Stat. 219, that a suit "to
enforce, suspend, or set aside, in whole or in part," an
order of the Commission relating to transportation and
made upon petition may be brought only in the district
"wherein is the residence of the party or any of the
parties upon whose petition the order was made."

It was objected in the District Court that the suits
were brought to enforce the Commission's order and
therefore could be entertained only in the Eastern Dis-
trict of Missouri, which embraces the residence of the
party upon whose petition the order was made. But,
the court sustained its jurisdiction, ruling that the suits
were not of the nature indicated by the objection.

In common acceptation a suit to enforce an order of
the Commission is. one which seeks to compel the car-
rier to whom the order is directed to yield obedience
to its command. Nothing in. the jurisdictional provi-
sion suggests that this is not what is intended, and that
it is is shown by the provision in § 16 of the Act to Reg-
ulate Commerce, c. 309, 36 Stat. 554, that, if an order
respecting transportation be not obeyed by the carrier,
the same may be enforced at the suit of the Commis-
sion, an injured party, or the United States, by an ap-
propriate writ or process restraining the carrier from
further disobedience and enjoing upon it due compli-
ance with the order. A reading of both provisions
leaves no room to doubt that the suit to enforce so
clearly outlined in one is the suit intended by the
other.

But these were not suits of that type. They were begun by the carriers, not against them, and proceeded upon the theory, not that the carriers were in default, but that they were proceeding to obey the order. What was alleged and sought to be enjoined was threatened action on the part of the defendants, the state authorities, whereby obedience on the part of the carriers would be obstructed and made the occasion for subjecting them to divers criminal proceedings, suits for penalities and the like. In other words, the suits were brought to prevent complete obedience by the carriers from being wrongfully obstructed and embarrassed, but not to enforce the order in the sense of the jurisdictional provision. Therefore that provision was not applicable to them. They properly came within the provision in § 1 of the Act of June 18, 1910, c. 309, 36 Stat. 539, repeated in Jud. Code, § 207, which preserves and continues the general jurisdiction of the District Courts over cases and proceedings not therein enumerated.

At this point it will be convenient to dispose of another objection relating to the principal suits, but not turning on the jurisdictional provision. Shortly after the carriers' bills were filed the court, acting upon a motion of the defendants, ruled that the United States and the Commission were necessary parties, ordered that they be made defendants, and directed the issue of process against them. After they were thus brought in, the matter was considered again and the bills were dismissed as to them for want of jurisdiction. The defendants now say that after this dismissal the court did not have before it the requisite parties to enable it to entertain the bills. But the point is not tenable. There was no statute making the United States or the Commission a necessary party to bills of that nature, nor was the relief sought such as to render the presence of either essential under the rules applicable to suits in equity.

It well may be that either or both, if desiring to intervene, would have been permitted to do so, but there is no warrant for thinking that without their presence the bills could not be entertained.

The cross bills assailed the validity of the Commission's order on various grounds and concluded with a prayer that it be set aside and annulled and that the United States and the Commission be enjoined from enforcing it and the carriers from complying with it. Passing the fact that they were presented as *cross* bills, it is apparent that in subject-matter and purpose they were suits to set aside the order. By statute such suits are required to be brought against the United States, Jud. Code, §§ 208, 211; c. 32, 38 Stat. 219–220, and the jurisdictional provision before mentioned permits them to be brought only in designated districts. Here the Eastern District of Missouri was the one designated, the order being one that was made upon the petition of a resident of that' district. The United States had consented to be sued there, but not elsewhere, and, being suable only by its consent, could not be sued in a district not within the consent given. See *Finn* v. *United States*, 123 U. S. 227, 232–233; *Schillinger* v. *United States*, 155 U. S. 163, 166. It therefore is certain that the cross bills could not be entertained in the Northern District. of Illinois, unless in this regard there be, as is asserted, a valid distinction between a. cross bill and an original bill. No doubt there are situations in which a cross bill against an ordinary suitor may be considered and dealt with in virtue of the jurisdiction over the principal suit, even though as an original bill it could not be entertained (see *Denver* v. *New York Trust Co.*, 229 U. S. 123, 135, and cases cited); but it is otherwise where the cross bill is against the United States, for no suit against it can be brought without its consent given by law. Its immunity recognizes no distinction between cross

bills and original bills, or between ancillary suits and original suits, but extends to suits of every class. *United States* v. *McLemore,* 4 How. 286; *Hill* v. *United States,* 9 How. 386; *Reeside* v. *Walker,* 11 How. 272, 290; *De-Groot* v. *United States,* 5 Wall. 419, 431–433; *Carr* v. *United States,* 98 U. S. 433, 437; *Belknap* v. *Schild,* 161 U. S. 10, 16. Thus the cross bills as such had no better standing than they would have had as original bills.

The claim is made that in any event the cross bills should have been retained as to the defendants therein other than the United States. But this is not an admissible view. As before indicated, the United States is made by statute a necessary party to a suit to set aside an order of the Commission, and this means that it is to stand in judgment as representing the public. If the state authorities thought the order should be set aside and wished to test their right to affirmative relief along that line they should have resorted to the court empowered by law to entertain a suit of that nature.

It follows that the District Court rightly disposed of the jurisdictional questions by entertaining the principal suits and declining to entertain the cross bills.

Whether the suits by the carriers were rightly dismissed on the merits is the principal question, and its solution turns on the power of the Commission to deal with discrimination arising out of a disparity in interstate and intrastate rates, and on the scope and effect of the order made.

In their answers the state authorities took the position that in so far as the order purports to authorize or require a removal of the discrimination found to exist by a change in intrastate rates it is in excess of any power that has been or can be conferred on the Commission, and therefore neither relieves the carriers from full compliance with the state rate law nor prevents that law from being fully enforced against them. If

the premise were sound the conclusion doubtless would follow, for where the Commission makes an order which it has no power to make the order is necessarily void, not merely voidable. But that the premise is not sound is settled by the *Shreveport Case (Houston, East & West. Texas Ry. Co.* v. *United States)* 234 U. S. 342. Upon full consideration it there was held:

1. Under the commerce clause of the Constitution Congress has ample power to prevent the common instrumentalities of interstate and intrastate commerce, such as the railroads, from being used in their intrastate operations in such manner as to affect injuriously traffic which is interstate.

2. Where unjust discrimination against interstate commerce arises out of the relation of intrastate to interstate rates this power may be exerted to remove the discrimination, and this whether the intrastate rates are maintained under a local statute or by the voluntary act of the carrier.

3. In correcting such discrimination Congress is not restricted to an adjustment or reduction of the interstate rates, but may prescribe a reasonable standard to which they shall conform and require the carrier to adjust the intrastate rates in such way as to remove the discrimination; for where the interstate and intrastate transactions of carriers are so related that the effective regulation of one involves control of the other, it is Congress, and not the State, that is entitled to prescribe the dominant rule.

4. It is admissible for Congress to provide for the execution of this power through a subordinate body such as the Interstate Commerce Commission, and this it has done by the Act to Regulate Commerce.

5. Where in the exercise of its delegated authority the Commission not only finds that a disparity in the two classes of rates is resulting in unjust discrimination

against interstate commerce but also determines what are reasonable rates for the interstate traffic, and then directs the removal of the discrimination, the carrier not only is entitled to put in force the interstate rates found reasonable ,but is free to remove the forbidden discrimination by bringing the intrastate rates to the same level.

Upon further consideration that decision was approved and followed in *American Express Co.* v. *Caldwell*, 244 U. S. 617.

The parties differ widely about the scope of the order. The carriers assert that it covers every intrastate passenger rate in Illinois, is addressed to the removal of discrimination found to be state-wide, and gives ample authority for increasing all rates between points in Illinois from 2 cents to 2.4 cents per mile. On the other hand, the state authorities assert that it is not state-wide and that the extent to which it is intended to affect the state-made rates is so indefinitely and vaguely stated as to make it inoperative and of no effect as to them. Of course, the Commission could adjust the remedy to the evil and make the order as broad as the wrongful discrimination; and not improbably it would intend to go that far and no farther. But the extent of the discrimination found and of the remedy applied must be gathered from the reports and order of the Commission, for they constitute the only authoritative evidence of its action. The reports show that the only discrimination found relates to the passenger traffic between Illinois and two cities outside that State—St. Louis and Keokuk. There is no finding that this traffic extends in appreciable volume to all sections of Illinois. As to some sections its volume may be very large and as to others almost or quite negligible. At best the reports leave the matter uncertain. Obviously this traffic is only a small part of the interstate passenger traffic moving over

the railroads in Illinois, and yet the finding is merely that there was discrimination against this part. Had the Commission regarded the discrimination as state-wide it is but reasonable to believe that it would have said so in its findings. And had it intended to require or authorize a state-wide readjustment of the intrastate rates it doubtless would have given direct expression to that purpose, which easily could have been done in a few lines. But neither in any part nor as a whole does the order plainly manifest such a purpose. In harmony with the reports it deals with the intrastate rates in so far only as they result in discrimination against inter-state traffic to and from St. Louis and Keokuk. Its most comprehensive paragraph—the next to the last—declares that the carriers must "abstain from the undue preferences and the undue and unreasonable prejudices and disadvantages found in said report to result from the contemporaneous maintenance between Illinois points of passenger fares, which fares, in combination with other fares required or permitted by this order, would produce the discrimination against interstate commerce and the undue preferences in favor of intrastate commerce condemned in the report of the Commission." But even here the general terms are so far restrained by the reference to the reports as to show that nothing more is intended than to command the removal of the discrimination to which the traffic to and from St. Louis and Keokuk is subjected. Besides, this paragraph evidently proceeds upon the theory that some of the intrastate rates are not affected by the other paragraphs, and ought not to be disturbed save where their use in connection with rates sanctioned by the order will be productive of the discrimination which it is intended to correct.

But while the order shows that it is not intended to require or authorize a readjustment of all the intrastate

rates, the description of those to which it applies is at best indefinite. There may be less uncertainty in some parts of the order than in others, but when each is read in the light of the rest and all in the light of the reports it is apparent that none has a certain or definite field of operation. The uncertainty arises out of a failure to designate with appropriate precision the territory or points to and from which the intrastate rates must or may be readjusted, and this omission accords with the absence from the reports of any finding showing definitely the territory or points where those rates operate prejudicially against the interstate traffic which the order is intended to protect.

To be effective in respect of intrastate rates established and maintained under state authority an order of the Commission of the kind now under consideration must have a definite field of operation and not leave the territory or points to which it applies uncertain. Upon this point we said in *American Express Co.* v. *Caldwell, supra,* p. 625:

"Where a proceeding to remove unjust discrimination presents solely the question whether the carrier has improperly exercised its authority to initiate rates, the Commission may legally order, in general terms, the removal of the discrimination shown, leaving upon the carrier the burden of determining also the points to and from which rates must be changed, in order to effect a removal of the discrimination. But where, as here, there is a conflict between the federal and the state authorities, the Commission's order cannot serve as a justification for disregarding a regulation or order issued under state authority, unless, and except so far as, it is definite as to the territory or points to which it applies. For the power of the Commission is dominant only to the extent that the exercise is found by it to be necessary to remove the existing discrimination against interstate traffic."

In construing federal statutes enacted under the power conferred by the commerce clause of the Constitution the rule is that it should never be held that Congress intends to supersede or suspend the exercise of the reserved powers of a State, even where that may be done, unless, and except so far as, its purpose to do so is clearly manifested. *Reid* v. *Colorado*, 187 U. S. 137, 148; *Cummings* v. *Chicago*, 188 U. S. 410, 430; *Savage* v. *Jones*, 225 U. S. 501; *Missouri, Kansas & Texas Ry. Co.* v. *Harris*, 234 U. S. 412, 419. This being true of an act of Congress, it is obvious that an order of a subordinate agency, such as the Commission, should not be given precedence over a state rate statute otherwise valid, unless, and except so far as, it conforms to a high standard of certainty.

We conclude that the uncertainty in this order is such as to render it inoperative and of no effect as to the intrastate rates, established and maintained under a law of the State, and therefore that the suits by the carriers were rightly dismissed on the merits.

*Decrees affirmed.*

MR. JUSTICE HOLMES took no part in the consideration or decision of this case.