**STATE OF MONTANA et al. v. UNITED STATES et al.**

**Civ. 586.**

United States District Court
D. Montana, Helena Division.
July 24, 1952.

See also, 106 F.Supp. 786.

Arnold H. Olsen, Atty. Gen. of Montana, H. M. Brickett, Asst. Atty. Gen. of Montana, and Edwin S. Booth, Jr., Secretary-Counsel of the Board of Railroad Commissioners of Montana and Special Asst. Atty. Gen. of Montana, for the plaintiffs.

Lewis, Grant, Newton, Davis & Henry, Donald S. Graham, Denver, Colo., for intervening plaintiff American Crystal Sugar Co.

Martin & Holt, Edward A. Walsh, Denver, Colo., for Great Western Sugar Co.

Dennis O'Rourke, Lowe P. Siddons, Colorado Springs, Colo., for Holly Sugar Co.

Milton C. Gunn, Helena, Mont., for all sugar companies.

Edmond G. Toomey and Michael J. Hughes, Helena, Mont., for intervening plaintiffs Montana Stockgrowers Assn., Inc. and Montana Wool Growers Assn.

E. Riggs McConnell, Special Asst. to the Atty. Gen., for the United States. Leo H. Pou, Asst. Chief Counsel, Interstate Commerce Commission, Washington, D. C., and Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., James E. Kilday, Special Asst. to the Atty. Gen. and Dalton Pierson, U. S. Atty., Butte, Mont., for defendants United States and Interstate Commerce Commission.

Marcellus L. Countryman, Jr., Conrad Olson, St. Paul, Minn. (Edwin C. Matthias, John C. Smith, Louis E. Torinus, Jr., St. Paul, Minn., Carson L. Taylor, Thomas H. Maguire, Chicago, Ill., Byron E. Lutterman, Seattle Wash., Elmer B. Collins, Asst. Western Gen. Counsel, Union Pacific Railroad, Omaha, Neb., Eldon M. Martin, Chicago, Ill., and Robert D. Corette, Butte, Mont., and Newell Gough, Jr., Helena, Mont., of counsel),for intervening defendant Railroad Companies.

Before POPE, Circuit Judge, PRAY, Chief Judge, and MURRAY, District Judges.

### PER CURIAM.

This is a proceeding under the provisions of Title 28, U.S.C. §§ 2321–2325, brought on the petition of the State of Montana and the Board of Railroad Commissioners thereof against the United States of America, seeking an injunction restraining the enforcement and operation of an order of the Interstate Commerce

Commission authorizing the railroads mentioned in the order to establish and place in effect intrastate rates in Montana which will reflect in general an 8 per cent increase over those approved and permitted by the Board of Railroad Commissioners of the State of Montana for such intrastate traffic.

In proceedings before the Interstate Commerce Commission, here referred to as the Commission, which preceded those in which the order now under attack was made, the railroads operating in the State of Montana with other similar carriers were granted permission to establish a series of general increases in interstate rates. These were granted by the Commission in order to meet increased costs of materials, supplies, wages and other items entering into operating costs, which in general resulted from postwar inflationary trends. In Ex Parte 162, 266 I.C.C. 537, decided December 5, 1946, an increase of 20 per cent in interstate rates in western territory, which includes Montana, was granted, subject to qualifications not here material. In Ex Parte 166, 270 I.C.C. 81, decided December 27, 1947, the Commission granted a further interstate increase of 20 per cent. Following each of these increases, the railroads operating in Montana made application to the Board of Railroad Commissioners of the State of Montana, herein referred to as the Board, for like increases intrastate. Following the Ex Parte 162 order of the Commission, the Board granted like increases intrastate with minor exceptions. Similarly following the Commission's order in Ex Parte 166, the Board granted a corresponding increase as to intrastate commerce, except that as to sugar beets and livestock it limited the authorized increase to one of 10 per cent.

Thereafter on August 2, 1949, in a proceeding known as Ex Parte 168, the Commission granted a further increase in rates in interstate traffic in western territory of 8 per cent. These rates became effective September 1, 1949. Upon application to the Board for corresponding increases on intrastate traffic the Board refused to permit the increases. This refusal was followed by proceedings before the Commission instituted September 22, 1950, seeking an order from the Commission under section 13(4) of the Transportation Act of 1940, 49 U.S.C.A. § 13(4), that intrastate rates in Montana be increased by the percentage authorized as to interstate rates, by the Commission in the earlier proceedings mentioned. The order there sought was granted and that is the order here in question.

■ The opinion and findings of the Commission, upon which its order is based, listed numerous instances of what the Commission found to be unjust discriminations between persons or localities in intrastate commerce on the one hand, and interstate or foreign commerce on the other hand. These instances thus listed by the Commission in the opinion which accompanies its findings, although considerable in number and although sufficient to warrant appropriate orders by the Commission increasing the particular intrastate rates which produced the unfair discrepancy, as the Commission is empowered to do under the doctrine of Houston, East & West Texas Ry. Co. v. U. S., 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341, do not in our opinion support or warrant the order here in question, which "includes (rates) between all interior points although neither may be near the border and the (rates) between them may not work a discrimination against interstate (commerce) at all." Railroad Comm. of Wisconsin v. Chicago B. & Q. R. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371. There is evidence in the Commission's report that it recognized this limitation, for it expressly recited that its power to require the broad increase here ordered must be predicated upon other grounds saying:

"Our power to require an increase in intrastate rates and charges depends upon whether intrastate traffic is contributing its fair share of the earnings required to meet maintenance and operating costs and to yield a fair return on the value of the property devoted to the transportation service, both interstate and intrastate."

■ The State and the Board, while not questioning the power of the Commission

to make an order requiring a state wide increase of instrastate rates in the circumstances stated in the quotation just made, say that the order here before us is invalid because the findings upon which it is based do not measure up to the "high standard of certainty" required in respect to such orders. North Carolina v. United States, 325 U.S. 507, 511, 65 S.Ct. 1260, 1264, 89 L.Ed. 1760. It is contended that there was no evidence to show that the intrastate rates must be increased 8 per cent or any other percent before such traffic will contribute " 'its fair share of the revenue required to enable respondents to render adequate and efficient transportation service.' " The State also urges that the findings lack a determination in this respect and says that before the Commission may make the necessary · fundamental finding as to whether a fair share is being contributed, it must make inquiry into the costs of the intrastate commerce within Montana in relation to the state revenue and the costs and revenue from the entire system of each railroad. The Commission found that the segregation of such costs of handling intrastate traffic was impossible; that they could not be determined or segregated from the total cost incurred in handling all traffic.[1] The Commission arrived at its conclusion that the same 8 per cent increase must be added to the intrastate rates in order to bring them to the point where they would produce their fair share of the required revenue, by stating:

"Increased costs are, however, as applicable in Montana as in any other place, *and on the assumption that the relationship of the Montana intrastate rates to the interstate rates prior to the general rate increase proceedings was proper*, the former should be increased the same extent as the latter to maintain that relationship." (Emphasis added.)

The State and the Board assert that the Commission may not properly make any

such assumption. They say that this assumed proper relationship of intrastate and interstate rates prior to any of these increases is a matter of proof and of finding. The contention is that for aught that appears here, the intrastate rates which antedated any of these increases may have been disproportionately high, and that the effect of the last interstate increase may have operated to do no more than bring the two sets of rates into a just proportion.

A like question arose under very similar circumstances in the case of State of Montana v. United States, D.C. 1933, 2 F.Supp. 448, 450, in which a three-Judge court, sitting in this district, was asked to enjoin an order increasing intrastate freight rates under circumstances very similar to those presented here. The opinion in that case expressly approved an assumption identical with that here drawn in question, and sustained the order there under attack. The Court said:

"By reason of the presumption of regularity in official duty theretofore performed, it is to be assumed, even as it is unquestioned, that at the time of interstate increase ordered interstate rates and intrastate rates were in just relationship, a harmonious whole, each contributing its fair proportion of total revenues in discharge of their common obligation to adequately maintain the railroads and service in common used by interstate and intrastate commerce."

In respect to the particular argument here discussed, if the law now applicable be the same as that at the time of the decision of the case just cited, we would be constrained to follow that decision and to consider it dispositive of the point mentioned for the reason that the judgment in that case was affirmed by the Supreme Court, per curiam, in Montana v. United States, 290 U.S. 593, 54 S.Ct. 125, 78 L.Ed. 523. Other decisions rendered about the same time would seem to indicate that in the situation in which the Commission here found

---

1. The report which accompanied the findings recited:

"As to whether the present intrastate rates in Montana are insufficient to cover the service performed respondents have been unable to determine the cost of handling intrastate traffic. It is virtually impossible to separate the costs in the various States from the total cost incurred in handling all traffic."

itself it was unnecessary to segregate and separate intrastate and interstate costs and revenues where it appears that the conditions under which interstate and intrastate traffic moved are substantially the same with respect to all factors bearing on the reasonableness of the rate and the two classes are shown to be intimately bound together. Illinois Commerce Comm. v. U. S., 292 U.S. 474, 483, 54 S.Ct. 783, 78 L.Ed. 1371. Here the Commission has made findings, which we must accept, that the intrastate traffic and the interstate traffic are handled within Montana in the same trains, by the same crews and with the same facilities and that in the physical handling both are inextricably commingled. It found that both types of traffic move under substantially similar conditions and the expense of handling the two classes is inextricably woven together. It found that an attempt to do the impossible, namely to show costs of intrastate service segregated from interstate costs, would serve no useful purpose.

These findings would appear to require a conclusion such as that arrived at in Illinois Commerce Comm. v. U. S., supra, and in the three-Judge court decision from which quotation has been made, unless it can be said, as the plaintiffs here contend, that a different rule and a higher standard for findings upon this point is called for by what was said by the Supreme Court in North Carolina v. United States, supra.

In its discussion of the rules applicable to cases of this character, the Supreme Court in that case pointed out, clearly and emphatically, that since in a case of this character the Commission was moving into the field of intrastate transportation, which is primarily the concern of the State:

"A scrupulous regard for maintaining the power of the state in this field has caused this Court to require that Interstate Commerce Commission orders giving precedence to federal rates must meet 'a high standard of certainty.' Illinois Central R. Co. v. Public Utilities Commission, 245 U.S. 493, 510, 38 S.Ct. 170, 176, 62 L.Ed. 425. Before the Commission can nullify a state rate, justification for the 'exercise of the federal power must clearly appear.' * * * The foregoing cases also stand for the principle that the Interstate Commerce Commission is without authority to supplant a state-prescribed intra-state rate unless there are clear findings, supported by evidence, of each element essential to the exercise of that power by the Commission."

What was said in that case, coupled with the argument here, that the findings of the Commission now before us are as deficient as those which brought condemnation of the order in the North Carolina case has caused us much concern. The State argues that all we have here in addition to what appeared in the findings in the North Carolina case is an assumption which has no relation to any facts in evidence. The State says that the Commission's findings disclose on their face that the prior relationship of the two classes of rates is merely assumed and not proven to have been right and proper.

We are constrained to hold that the North Carolina case did not undertake to change the law as it theretofore existed or to increase the requirements as to the Commission's findings. In the first place the language of the Court bears no evidence of an intent to establish a new rule. Furthermore, so far as this particular point is concerned, there were facts in that case which differ from the facts which were before the three-Judge court in State of Montana v. United States, previously cited. In the North Carolina case, it was pointed out that there was reasonable doubt as to whether the Commission had ever fixed as the only reasonable interstate rate the rate which was sought to be established intrastate. The Court dwelt at length upon the manner in which the Commission had authorized a charge of 2.2 cents per mile, but without a hearing or evidence or finding that the railroads needed this increase. These circumstances alone were sufficient to disclose the absence of a basis for the order relating to an intrastate carriage. Furthermore, the Court pointed out that at the time of the order under attack former deficits of the North Carolina railroads had been transformed by very large revenue increases into very substantial profits. The Court said

that this showed that had the Commission made any findings on the subject at all, it might properly have found that a much lower rate would have produced a fair intrastate contribution to revenues.

We think that it is obvious that in the circumstances of this case, where segregation of intrastate costs is found to be impossible, there would be no way in which the Commission could exercise its statutory power to make an order which will require intrastate rates to contribute their fair share toward the revenue required to maintain an efficient railroad system, if the method and procedure adopted by the Commission in this case is not permissible. We do not think that anything said in the North Carolina case could have been intended to have the effect of requiring an impossibility.

We are also impressed with the argument made on behalf of the Commission that the "just relationship" of interstate and intrastate rates mentioned in the opinion of Judge Bourquin in the three-Judge case previously cited may not only be supported by the presumption there mentioned, but that an inference to like effect may be drawn from the fact that for a considerable number of years intrastate rates subject to continuous regulation by the Board and interstate rates subject to continuous regulation by the Commission shook down and fell into a relationship each to the other, which was the result of both action and nonaction by shippers, Board and Commission.

It may be argued that if this assumption is to be made in all such cases, then there is no purpose in the Act's requirement of a hearing. If an increase in interstate rates precentagewise is always to be followed by a similar increase in intrastate rates, what remains to be heard? We think that the answer is that the presumption mentioned by Judge Bourquin and the inference from lapse of time to which we have referred is sufficient in the circumstances of practical impossibility to produce evidence of local costs sufficient to make a prima facie showing in respect to which the Board and the objecting shippers had an opportunity to offer evidence to the contrary,—if, for ex-

ample, they were able to disclose that the prior intrastate rates were already disproportionately high. We think that in this connection we should say what the Supreme Court said in the somewhat different case of United States v. Louisiana, 290 U.S. 70, at page 79, 54 S.Ct. 28, at page 33, 78 L.Ed. 181:

"The case of the Louisiana rates was not alone before the Commission, and it should not be treated as though it were. A number of other states, contesting in, the aggregate, a wide range of rates, were heard at the same time. Had the Commission been required to go into the circumstances of each item with particularity the purpose of its original order would have been defeated. *It sufficed that the Commission found that Louisiana showed nothing in the circumstances of its agriculture and industry or its traffic conditions so different from the rest of the country as to lead to the conclusion that the intrastate rates, raised to the reasonable general interstate level, would not themselves be reasonable;* and that it saved the rights of interested parties to test the reasonableness of any individual rate." (Emphasis added.)

Here we think it sufficed that the Commission's report and findings disclose that Montana showed nothing in the circumstances relating to its prior intrastate rates so different from interstate rates as to lead to the conclusion that raising the intrastate rates in the same proportion as that applied to the interstate increase would be unreasonable or would not operate to bring about the result of securing a fair share of the required revenue from the local rates. We see no reason therefore for a departure. from the views expressed in the three-Judge court case previously cited.

 Our examination of the record in other respects has led us to grave doubt as to the sufficiency of the findings in another particular. As was said in the North Carolina case, supra, the mere existence of a disparity between particular rates on intrastate and interstate traffic does not warrant the Commission in prescribing intrastate rates, 325 U.S. at page 516, 65 S.Ct. 1260,

89 L.Ed. 1760, and the standard for the Commission's determination in a case of this kind is not whether the intrastate traffic is contributing its fair share of the railroads' total revenue—the question is whether it is contributing its fair share "of the revenue required to enable respondents to render adequate and efficient transportation service".

In the North Carolina case, one of the defects in the Commission's findings was that "it made no finding as to what amount of revenue was required to enable these railroads to operate efficiently". We have examined the voluminous record before us with all the care and diligence which the time allowed has permitted us to exercise and we must say that it now appears to us that the same deficiency exists in the findings attached to the order here under review. Undoubtedly the Commission properly took official notice in this hearing of its findings and order in Ex Parte 168, which immediately preceded the proceedings here under review. See Davis on Administrative Law, 1951, Sec. 155, page 508. We have examined the order, findings and report in that matter in 276 I.C.C. 9. It is there found, or it may be inferred therefrom, that an increase in interstate rates of 8 per cent is required to produce sums sufficient to permit railroads within the western territory, which includes Montana, to procure the required amount of revenue. The statement is "the anticipated revenue from the increases in rates and charges herein authorized and found to be just and reasonable is necessary to aid petitioners in meeting these outlays". There follows the order for the 8 per cent increase in interstatee rates. The record of those proceedings appears to us to be devoid of any statement or finding to the effect that the 8 per cent will be sufficient on the assumption that a like increase be procured thereafter in respect to intrastate rates. We find no statement of the total amount required for the maintenance of the necessary adequate services and the payment of a reasonable rate on the investment anywhere in that record, nor can we discover figures from which we might calculate for ourselves and determine whether the Com-

mission intended to find that there was required an 8 per cent increase on interstate rates in addition to a contemplated or any increase on intrastate rates. If the Commission intended any such conclusion, it most successfully refrained from disclosing it in writing. The Commission is not without experience in these matters and presumably had in mind that in its order referred to in Illinois Commerce Comm. v. U. S., supra, 292 U.S. at page 478, 54 S.Ct. 783, 78 L.Ed. 1371, it had expressed its contemplation that the state commissions would bring intrastate rates into harmony with the interstate rates it prescribed. There one would find reason for an inference that the interstate rates prescribed were fixed at the rates allowed in contemplation of the procuring of like increases intrastate. We find no such help in the record here mentioned. Here the Commission has made no finding that when the interstate increases are collected the railroads will still be short of the required revenues whatever those may be. If, as those proceedings suggest, the interstate increase will take care of the unstated required amount, then an appropriate adjustment of the whole matter would appear to be not that required by this order, but rather a lowering of the interstate rates there fixed accompanied by an appropriate increase of the intrastate rates which then would result in an over-all across the board increase of something less than 8 per cent.

Nor does the order, findings and report now under review supply the missing facts or findings. Under the heading of "Respondents' property, investment and revenues", the report gives numerous figures as to the property investment of the Class I railroads serving Montana, ranging from 1929 to 1949. Also given are the rates of return for the same periods showing a rate for 1949 substantially less than that predicted for the western territory railroads in Ex Parte 168 for that year, but this is followed by a statement that in the first quarter of 1949 these carriers had an operating deficit in excess of $5,000,000 as a result of unusually severe weather conditions in the areas served by them. It appears that in 1950, with the opening of Korean hostilities, op-

erating revenues considerably increased. This portion of the report gives the deficit for 1949 in passenger operations, but gives us no assistance as to how this figure may be incorporated into a calculation which the Commission neglected to make for itself. The report states that as a result of questionnaires received from the carriers, it can conclude that due to the failure of the Montana Commission to grant the increases requested there has been a "total revenue loss" approximating $700,000 a year. The context shows that the loss here referred to is not an actual loss, but only a loss in the sense that it represents amounts which the carriers might have collected in addition to their actual collections had the requested intrastate increases been permitted. The Commission report, commenting on the arguments of the respondents in the proceeding before the Commission said:

"They also take the position that rates and charges increased as sought will produce revenue necessary to enable them to maintain in the public interest adequate and efficient railroad transportation service at the lowest cost consistent with the furnishing of such service, as declared by Congress in the national transportation policy and in section 15a (2) of the act."

This does no more than to show that the respondents appreciated the questions involved in the proceeding, but it is not a finding by the Commission. The utmost extent to which the report and findings appear to go is in the statement:

"The findings in Ex Parte Nos. 162, 166 and 168 authorizing increases in interstate rates and charges indicate that like increases ought to be made in in-

trastate rates and charges including those within Montana."

We are well informed by the Commission's order itself that it thinks these increases "ought to be made". But as stated in the North Carolina case, they cannot be made unless the Commission by appropriate findings based on evidence states *why* they ought to be made.

■■ Before concluding we wish to add to the comments previously made with respect to the apparent insufficiency of the findings that we have noted that in its formal finding No. 4, the Commission stated that the Montana intrastate rates and charges "are not contributing their fair share to the revenues required by respondents to enable them to render adequate and efficient service and to operate profitably." This is precisely the conclusion reached by the Commission in the North Carolina case and is in large part in precisely the same language quoted by the Supreme Court at page 514 of 325 U.S., 65 S.Ct. 1260, 1264, 89 L.Ed. 1760, but this general conclusion of the Commission leaves us in the same predicament in which the Supreme Court found itself in that case. As the Supreme Court there said:

"This conclusion of the Commission, if based on findings supported by evidence, would justify its order."

The difficulty there was the same as our difficulty here, which is that so far we have been unable to discover such findings.[2]

If we had had adequate time to read more thoroughly the record before us so that we might say with perfect assurance that the essential findings here indicated to be lacking are not concealed in some obscure portion of the report, we would proceed to is-

2. Another point seriously urged by the plaintiffs during the argument was that the interstate rates were not declared by the Commission to be the only reasonable rates, that they were merely maximum rates found reasonable, while the rates ordered as the intrastate rates within Montana were determined by the Commission to be minimum reasonable rates which the Board would be without power to decrease. It was pointed out that the carriers could at any time publish rates below the interstate maximums.

It is said that if and when the carriers do adjust interstate rates accordingly, there will be no appropriate or proper relationship between the interstate rates actually charged, and the minimum intrastate rates here fixed by the Commission.

As of now it occurs to us that this objection may be answered by the phraseology of the Commission's finding No. 7, but this we think may properly be the subject of further argument at the hearing hereafter fixed.

sue an injunction against the enforcement of the order. However, the point last discussed by us was not argued at the hearing and we think that fairness requires that the parties be heard upon this question. Accordingly, It is ordered that the submission of the cause heretofore made on July 21, 1952, be vacated and the cause be and the same hereby is set for further argument before this court at the court room at Helena, Montana, at the hour of 10:00 o'clock A.M. on Monday, August 11, 1952.

And for the reasons herein stated, which are hereby adopted as the findings of the Court in connection with the order hereinafter stated and made, the Court finds that for good cause shown the aforesaid order of the Interstate Commerce Commission should be stayed and its operation and enforcement restrained in its entirety, pending the final hearing and determination of this action as herein ordered, and it appearing to the Court that it is necessary that the operation of said order be stayed and suspended and that a temporary injunction issue to that effect, in order to avoid irreparable damage which will result if the order is not granted, in that a multitude of claims for refunds would result should said stay not be granted and the Court finally adjudge the order invalid, It is ordered that the operation of said Interstate Commerce Commission order be and the same is hereby stayed and suspended, and the defendants, their agents and all persons acting under them or pursuant to their authority be and they are restrained and enjoined from enforcing said order until the final hearing and determination of this action.

