**UNITED STATES v. PATTERSON et al.**
No. 14348.

United States Court of Appeals
Fifth Circuit.
Aug. 25, 1953.

Harold S. Harrison, Atty. Dept. of Justice, Washington, D. C., J. Ellis Mundy, U. S. Atty., Atlanta, Ga., F. Douglas King, Asst. U. S. Atty., Newnan, Ga., J. Edwards Williams, Acting Asst. Atty. Gen. Dept. of Justice and Roger P. Marquis, Atty. Dept.

of Justice, Washington, D. C., for appellant.

James Maddox, Wade C. Hoyt, Jr., and John W. Maddox, Rome, Ga., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

These appeals are concerned with the ownership of certain parcels of land situated in the 26th District, 3rd Section, Walker County, Georgia; specifically, portions of land lots 199, 200 and 201. These three lots are contiguous one to the other. The western boundary of lot 199 is the eastern boundary of lot 200 and the western boundary of lot 200 is the eastern boundary of lot 201. The northern and southern boundary lines of these three lots are parallel to each other and are not in dispute. The United States acquired title to, and now owns, lot 201 and the north one-half of lot 200 by virtue of condemnation proceedings consummated in 1939 and 1942. Jack B. Malone and his mother, Lois B. Malone, who are appellees here, own lot 199 and the south one-half of lot 200. The contention of the Malones is that lot 199 is a full 160 acre lot. The Government claims that it is a fractional, or "short", lot, containing a little less than 80 acres. The principal issue involved is the location of the disputed boundary line between lots 200 and 199.

The United States instituted two suits against the Malones, Patterson, Thomas and others to recover damages for the removal of timber from its property, for a judgment decreeing it to be the owner of the lands from which the timber had been removed and for an injunction restraining the defendants from trespassing thereon. The Malones answered and denied the allegations made against them and filed a counterclaim alleging that the United States, by and through its employees, had trespassed upon their property and prayed for an injunction restraining further trespass. Patterson and Thomas, who had cut and removed timber from the disputed area, answered and denied that they had re-moved any timber from the Government's property, alleging that they had cut and removed timber only from lands owned by the Malones with their consent and at their direction. The two suits were consolidated for trial.

At the close of the Government's evidence, the Malones moved the court to dismiss them as parties defendant and for a directed verdict. These motions were granted and the court entered an order enjoining and restraining the United States from trespassing upon lot 199 and the south one-half of lot 200. It also adjudged that lot 199 contains 160 acres. Evidence was then introduced on behalf of Patterson and Thomas, the other defendants having been dismissed, at the close of which the issue of damages was submitted to the jury. Verdicts were returned against Patterson individually and Patterson and Thomas jointly with respect to timber which they had cut and removed from property owned by the United States other than the lands in dispute. Judgments were entered in accordance with the verdicts. No appeals have been filed from these judgments. Costs were taxed against the United States in favor of the Malones.

The Government has appealed from the order enjoining it from trespassing upon the property claimed by the Malones and decreeing that lot 199 contains 160 acres; from an order overruling its motion to set aside the restraining order, and from the judgment taxing costs against it. It contends that the effect of the verdict directed against it, holding that lot 199 contains 160 acres, is to divest it of title to land which it acquired by condemnation. It is urged that in any event the evidence presented a question of fact as to the ownership of the disputed land which should have been submitted to the jury and that the court erred in determining this issue as a matter of law. It is further contended that the court was without jurisdiction to enjoin the United States from trespassing upon the land or to award costs against it.

■ As we have stated, the primary issue presented is the disputed boundary line between the property owned by the Gov-

ernment and that owned by the Malones. Since it is stipulated that the Malones own all of land lot 199 and there is no dispute as to the north, east and south boundary lines of that lot, a finding that it contains 160 acres indirectly establishes the west, or disputed, boundary line, there being no contention that it is an irregularly shaped lot. There was evidence that when the 26th District was originally surveyed in 1832, at the direction of the Surveyor General of the State of Georgia, the surveyor began at the northwest corner and proceeded to the east for nine miles from the point of beginning. At intervals of 40 chains he established corners, setting off a total of 18 tiers of land lots of equal size. The north-south land lot lines were established so that they intersected the west-east land lot lines at right angles, forming a total of 324 consecutively numbered land lots of approximately 160 acres each. Land lot 199 was contained in the most easterly, or last, north-south tier. It is bounded on the north by lot 198, on the east by what is now the Walker-Whitfield County line, on the south by lot 234 and on the west by lot 200. There was other evidence which we shall not recite in detail which tended to establish the fact that lot 199 contains 160 acres.

There was also evidence that the 27th District which is immediately to the north of the 26th District and the 25th District which is immediately to the south, all of which are in the 3rd Section, are bounded on the west and east by parallel lines which are continuations of the west and east boundary lines of the 26th District. These districts were originally surveyed in 1832 by two surveyors having instructions similar to those issued to William Slone, who surveyed the 26th District. The original survey of the 27th District indicates that there was a distance of only 8 miles 48 chains and 50 links between the west and east boundary lines. Consequently, the last north-south tier of lots in that district were indicated to be fractional lots. A similar result was indicated by the survey of the 25th District where the surveyor measured the distance between the west and east boundary lines at 8 miles and 60 chains.

A witness for the Government testified that he, as a qualified surveyor employed by the United States Forestry Service, surveyed the 26th District and found that the actual distance between its west and east boundaries is 21 chains less than 9 miles. This indicates that it would be impossible for there to be 18 tiers of full lots in that district. According to a survey made on behalf of the Government, the disputed boundary line is approximately 19 chains from the east boundary line of the district, which, if correct, would establish that lot 199 is a "short" lot containing a little less than 80 acres. A plat to which reference was made in the proceedings under which the Government acquired title to the north one-half of lot 200 also shows lot 199 as a fractional lot. Lot 198 and other lots in the same tier with lot 199 were condemned as fractional lots.

These facts do not demonstrate that as a matter of law the Government owned the property in dispute, or, conversely, that the Malones are the owners thereof. We sustain the Government's contention that the evidence made out a case for the jury as to the location of the boundary line. Determination of this question of fact may also require the court to ascertain the full extent of property and title which the Government acquired in the condemnation proceedings with reference to the north one-half of lot 200 as the property of Mrs. Minnie C. Warrenfells, et al. The court erred in determining this issue as a matter of law.

■ The court was of the opinion, and appellees insist, that the effect of the decree sought by the Government would be to set aside or modify the original land grant of the State of Georgia with regard to lot 199.[1] This grant, which is not in the record, is apparently conceded to indicate that lot 199 contains 160 acres. We are not impressed by this argument and do not think it requires a different result. The fact that

1. See § 85-301 et seq., Code of Georgia; Parker v. Hughes, 25 Ga. 374; Calhoun v. Cawley, 104 Ga. 335, 30 S.E. 773.

the disputed land lot line may also be one of the boundary lines of lot 199 as shown by the original grant, if it is so shown, does not convert this action into a proceeding to set aside, revoke or modify the State grant.[2]

 It is a fundamental principle that the United States can not be sued without its consent. This is true whether the claim is asserted in the form of an original action or as a counterclaim.[3] Further, it is beyond dispute that unless expressly permitted by an Act of Congress, no injunction can be granted against the United States.[4] The Malones contend that when the sovereign comes into court to enforce a claim it comes not as a sovereign but as a private suitor, and that it is subject to the same principles which govern other plaintiffs.[5] They say that since the United States sought to enjoin them from trespassing on the land, it "opened up the question of injunction" and is, therefore, subject to be enjoined just as any other suitor would be. There is no merit in this contention.

 While the rule has been broadly stated that the United States, by the institution of a civil action, submits to the court's jurisdiction in respect to a counterclaim properly assertable as a defense in a similar suit between private litigants,[6] it is now well settled that the United States does not waive its sovereign immunity by the institution of an action and does not become subject to an affirmative judgment, at least as to a counterclaim which could not have been asserted against it in an original action.[7]

 There remains for consideration the contention of the Government that the judgment taxing costs against it is void for want of jurisdiction of the court to award costs in the absence of statutory authority. The right of the court to tax costs against the United States, not merely an abuse of its discretion in doing so, is challenged. The United States is not liable for costs except when such liability is expressly provided for by an Act of Congress.[8] In this case the court erred in assessing costs against the United States.

Reversed and remanded.

2. Cf. Ballard v. W. T. Smith Lumber Co., 258 Ala. 436, 63 So.2d 376.

3. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; Nassau Smelting Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; Illinois Central R. Co. v. Public Utilities Comm., 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425.

4. Belknap v. Schild, 161 U.S. 10, 17, 16 S.Ct. 443, 40 L.Ed. 599; United States v. McLemore, 4 How. 286, 11 L.Ed. 977; Hill v. United States, 9 How. 386, 13 L.Ed. 185; McAvoy v. United States, 2 Cir., 178 F.2d 353. Cf. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 703, 69 S.Ct. 1457, 93 L.Ed. 1628.

5. See United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313; United States v. National City Bank of N. Y., 2 Cir., 83 F.2d 236; Mountain Copper Co. v. United States, 9 Cir., 142 F. 625;

E. C. Shevlin Co. v. United States, 9 Cir., 146 F.2d 613, 615.

6. United States v. National City Bank of N. Y., supra, 83 F.2d at page 238.

7. United States v. Shaw, supra; United States v. Fidelity & Guaranty Co., supra; United States v. 9 Acres of Land, D.C. 100 F.Supp. 378, affirmed, Oyster Shell Products Co. v. U. S., 5 Cir., 197 F.2d 1022; United States v. Davidson, 5 Cir., 139 F.2d 908; United States v. Merchants Transfer & Storage Co., 9 Cir., 144 F.2d 324; United States v. Meyer, 7 Cir., 113 F.2d 387, 394; United States v. Ring Const. Corp., D.C., 96 F.Supp. 762; United States v. Lashlee, D.C., 105 F.Supp. 184; 3 Moore's Federal Practice, 2d Ed., § 13.28, p. 75.

8. 28 U.S.C.A. § 2412(a); Ewing v. Gardner, 341 U.S. 321, 71 S.Ct. 684, 95 L.Ed. 968; Coyle Lines, Inc. v. United States, 5 Cir., 198 F.2d 195; Walling v. Frank Adam Elec. Co., 8 Cir., 163 F.2d 277; Walling v. Norfolk So. Ry. Co., 4 Cir., 162 F.2d 95.