**Ira B. HOLMES, Plaintiff,**

v.

**Honorable A. S. HENDERSON, Presiding Judge, Eighth Judicial District Court of Nevada, Dept. II, Defendant.**

**No. 142.**

United States District Court
D. Nevada.

Oct. 23, 1956.

Ira B. Holmes, San Mateo, Cal., in pro. per..

Howard W. Cannon,. of Hawkins & Cannon, Las Vegas, Nev., for defendant.

FOLEY, Chief Judge.

The plaintiff Ira B. Holmes seeks to recover damages in the amount of $7,000 from the Honorable A. S. Henderson, a Judge of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark. He claims that he has been deprived of his property without due process of law by reason of a decree of divorce rendered against him by the defendant Judge awarding to the defendant in the divorce action, hereinafter mentioned, certain real property. The case is now before this Court on defendant's motion to dismiss on the following grounds:

"To dismiss the above entitled action as it appears upon the face of the Second Amended Complaint that the Court is without jurisdiction in that the action is between citizens of the same state and presents for determination no question arising under the Constitution or laws. of the United. States, or otherwise, within the. jurisdiction of the Federal District Court."

Following is a summary of the substance of plaintiff's second amended complaint; the exhibits attached thereto, and of exhibits attached to the motion to dismiss.

Ira B. Holmes, plaintiff here, on November 28, 1951, through his attorney David Zenoff, Esq., instituted an action for divorce, numbered 54817, in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark. On January 25, 1952, Irene S. Holmes, defendant named in said complaint, through her attorney Howard W. Cannon, Esq., the defendant Judge's attorney here, filed her answer to the divorce complaint.

The defendant having made no counterclaim or having sought affirmative relief by cross complaint or answer, the Clerk did, on the 14th day of April, 1952, on the application of the plaintiff, enter judgment of dismissal of said divorce action, numbered 54817, as follows:

"On application of the plaintiff, and upon payment by him of all costs, and no counterclaim having been made, a request for dismissal of this cause having been duly entered in the register of actions in the office of the Clerk of this Court, said cause is therefore hereby dismissed."

On November 5, 1952, Judge Henderson made and entered the following Order:

"Order Vacating Order
of Dismissal

"This matter having come on for hearing this fifth day of November, 1952, plaintiff being represented by his attorney, David Zenoff, Esq., and the defendant being personally present, and by and through her attorney Howard W. Cannon, Esq., of Hawkins, Cannon, & Coulthard, the Court having received evidence against and in favor of Notice of Motion to vacate order dismissing action, and good cause appearing therefor,

"Now Therefore, it is hereby ordered, adjudged, and decreed that the Order of Dismissal hereinbefore entered in the above-entitled action on the 14th day of April, 1952, be and the same is hereby vacated."

On November 14, 1952, purported amended answer and cross complaint were filed in said divorce action.

On January 15, 1953, Judge Henderson entered a decree of divorce in favor

of Irene S. Holmes awarding and setting aside to her as her sole and separate property the property described in plaintiff's complaint in said divorce action.

The judgment of dismissal was entered pursuant to Sec. 8793, Comp.Laws of Nevada 1931–1941 Supp., the applicable provisions of which were:

"* * * An action may be dismissed, * * * in the following cases:

"1. By the plaintiff himself at any time before trial, upon the payment of costs, if a counterclaim has not been made or affirmative relief sought by the cross-complaint or answer of the defendant. The plaintiff as a condition to such dismissal shall pay to the clerk for the defendant such court fees as the defendant may have theretofore paid in such action to the clerk. * * *

"5. * * * The dismissal mentioned in the first two subdivisions shall be made by an entry in the clerk's register. Judgment may thereupon be entered accordingly. In every other case the judgment shall be rendered on the merits."

The effect of such a dismissal is plainly illustrated by the rulings of California courts dealing with Sec. 581, California Code of Civil Procedure, which may be, for our purposes, considered identical with Sec. 8793, N.C.L. Cook v. Stewart McKee & Co., Cal.App., 157 P.2d 868, 870. There, Presiding Justice Moore, speaking for the District Court of Appeal, had the following to say:

"(3–6) A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. Holt Mfg. Co. v. Collins, 154 Cal. 265, 275, 97 P. 516; King v. Superior Court, 12 Cal.App.2d 501, 507, 56 P.2d 268. * * * When dismissed against a sole defendant it is as though no action had ever been filed. After such dismissal the defendant is a stranger to the action.

Rogers v. Transamerica Corp., 6 Cal.App.2d 340, 341, 44 P.2d 635. By the clerk's entry no judicial act has been exercised from which appeal may be prosecuted."

In Simpson v. Superior Court, Cal. App., 158 P.2d 46, 48, it was held that:

"(2–4) * * * The privilege of dismissing an action as provided by Section 581 is designed to afford to the plaintiff a certain freedom of action within the limits prescribed that cannot be circumscribed indirectly. Any attempt to wrest such control in any manner except as provided and clearly intended by its provisions, is ineffective for all purposes.

"In the light of the record herein, the court was without power to entertain the defendant's motion to set aside the dismissals and such action, as well as the procedure that followed, was without legal sanction and void."

The question of whether costs were paid before the entry of such judgment of dismissal is immaterial. Hough v. Reserve Gold Mining Co., 51 Nev. 275, 274 P. 192, 193.

Upon this motion to dismiss, the allegations of the second amended complaint are to be taken as true and it is therein alleged that the plaintiff in said divorce action and, here, had no notice of any of the procedures or matters occurring after the Clerk's entry of dismissal of the action, and that he first learned of such procedures and of the purported judgment and decree of divorce on or about July 16, 1953. Service of the cross-complaint and of the amended answer was attempted by delivery of copies to David Zenoff, the attorney who represented the plaintiff in the dismissed divorce action. Upon the dismissal of the divorce action the action ended and the relationship of attorney and client between the plaintiff and said Zenoff was thereby terminated. As no service or notice of any of the pleadings or procedures occurring after the judg-

ment of dismissal was served personally upon Ira B. Holmes, or upon an attorney legally representing him, all of the matters occurring after the judgment of dismissal were done and performed in the absence of jurisdiction of the person of the plaintiff, Ira B. Holmes. All of the proceedings following the judgment of dismissal by the Clerk including the decree of divorce were without legal sanction and void.

The only assertion of federal jurisdiction in the second amended complaint is the following: "The plaintiff complains and alleges that this action arises under the Constitution and laws of the United States, as more fully appears hereafter, and the amount in controversy exceeds, exclusive of interest, costs, and damages, the sum of Three Thousand Dollars."

It may be noted, however, that in his original and amended complaint, plaintiff alleged that "this action arises under the Fourteenth Amendment of the Constitution of the United States."

In Francis v. Crafts, 1 Cir., 203 F.2d 809, 8 U.S.C.A. § 43, now 42 U.S.C.A. § 1983, was relied upon as the basis of jurisdiction. Summary judgment in favor of Honorable Frederic A. Crafts, Special Justice of the Second District Court of Eastern Middlesex, Massachusetts, was affirmed. The review of the authorities by Chief Judge Magruder in the opinion of the Court on the question of immunity of judges from civil liability is informative on the questions presented here.

In the course of the opinion in Bradley v. Fisher, 1871, 13 Wall. 335, 350, 80 U.S. 335, 20 L.Ed. 646, 650, Mr. Justice Field declared:

"In this country the judges of the superior courts of record are only responsible to the people, or the authorities constituted by the people, from whom they receive their commissions, for the manner in which they discharge the great trusts of their office. If in the exercise of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, they may be called to an account by impeachment and suspended or removed from office. In some states they may be thus suspended or removed without impeachment, by a vote of the two Houses of the legislature.

"In the case of Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285, decided by this court at the December term of 1868, we had occasion to consider at some length the liability of judicial officers to answer in a civil action for their judicial acts. In that case the plaintiff had been removed by the defendant, who was one of the justices of the superior court of Massachusetts, from the Bar of that state, and the action was brought for such removal, which was alleged in the declaration to have been made without lawful authority, and wantonly, arbitrarily and oppressively. In considering the questions presented the court observed that it was a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that if this were the case with respect to them, no such limitation existed with respect to judges of superior or general authority; that they were not liable in civil actions for their judicial acts, even when such acts were in excess of their jurisdiction 'unless, perhaps, when the acts in excess of jurisdiction are done maliciously or corruptly.' The qualifying words were inserted upon the suggestion that the previous language laid down the doctrine of judicial exemption from liability to civil actions in terms broader than was necessary for the case under consideration,

and that if the language remained unqualified it would require an explanation of some apparently conflicting adjudications found in the reports. They were not intended as an expression of opinion that in the cases supposed such liability would exist, but to avoid the expression of a contrary doctrine.

"In the present case, we have looked into the authorities and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.

"The distinction here made between acts done in excess of jurisdiction and acts where no jurisdiction whatever over the subject-matter exists, was taken by the court of King's bench, in Ackerly v. Parkinson, 3 M. & S. 411. In that case an action was brought against the vicar-general of the Bishop of Chester and his surrogate, who held the consistorial and episcopal court of the Bishop, for excommunicating the plaintiff with the greater excommunication for contumacy in not taking upon himself the administration of an intestate's effects, to

whom the plaintiff was next of kin, the citation issued to him being void, and having been so adjudged. The question presented was whether, under these circumstances, the action would lie. The citation being void, the plaintiff had not been legally brought before the court, and the subsequent proceedings were set aside, on appeal, on that ground. Lord Ellenborough observed that it was his opinion that the action was not maintainable if the ecclesiastical court had a general jurisdiction over the subject-matter, although the citation was a nullity, and said that 'no authority had been cited to show that the judge would be liable to an action where he has jurisdiction, but has proceeded erroneously, or, as it is termed, inverso ordine.' Mr. Justice Blanc said there was 'a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction;' and held that where the subject-matter was within the jurisdiction of the judge, and the conclusion was erroneous, although the party should, by reason of the error, be entitled to have the conclusion set aside and to be restored to his former rights, yet he was not entitled to claim compensation in damages for the injury done by such erroneous conclusion, as if the court had proceeded without any jurisdiction. Calder v. Halket, 3 Moore, P.C. 28."

By reason of the dismissal of the divorce action, the subsequent proceedings were void because of want of jurisdiction of that action and of the person of the plaintiff. However, all of these matters were done in the course of Judge Henderson's judicial functions, he and the court over which he presides having jurisdiction of the subject matter of divorce, domestic relations and property rights incident thereto. He is immune from civil liability for the complained of acts and procedures here.

Ordinarily great liberality should be exercised in allowance of amendments where inaccurate or inadequate jurisdictional allegations are involved, especially so where, like here, a plaintiff prosecutes his cause in propria persona. But the plaintiff can under no conceivable amendment state a cause of action against the defendant Judge.

It will be noted that the defendant's motion to dismiss the amended complaint does not include as one of the grounds for dismissal "failure to state a claim upon which relief can be granted." However, the holding of Judge Black in Foster v. National Biscuit Co., D.C.W.D. Wash., 31 F.Supp. 552, 553, applies here:

"(2) Plaintiff and amicus curiae both submit that the defendant had only interposed a motion to dismiss the action because $3,000 was not involved. However, when it does appear that a plaintiff has failed in his complaint to state facts sufficient to give jurisdiction to a Federal District Court by reason of failure to state facts sufficient to constitute any cause of action certainly the Court would have a right, even upon its own motion, to dismiss the complaint."

The motion to dismiss is granted.

It is therefore ordered that plaintiff's second amended complaint be, and it is hereby, dismissed without leave to amend.