CONCERNED CITIZENS OF BUSHKILL TOWNSHIP et al., Plaintiffs,

v.

Douglas COSTLE et al., Defendants,

and

Bushkill-Lower Lehigh Joint Sewer Authority, Defendant-Intervenor.

PLAINFIELD TOWNSHIP TAXPAYERS ASSOCIATION et al., Plaintiffs,

v.

Douglas COSTLE et al., Defendants,

and

Bushkill-Lower Lehigh Joint Sewer Authority, Defendant-Intervenor.

Civ. A. Nos. 77–3683, 77–3684.

United States District Court, E. D. Pennsylvania.

March 1, 1978.

22

Robert J. Sugarman, Philadelphia, Pa., Joseph M. Reibman, Easton, Pa., for Concerned Citizens of Bushkill Tp.

Peter F. Vaira, U. S. Atty., Robert S. Forster, Jr., Asst. U. S. Atty. and Kenneth N. Klass, Asst. Regional Counsel, Philadelphia, Pa., for Environmental Protection Agency.

T. B. K. Ringe, Reading, Pa., Robert Johnson, and Bruce S. Katcher, Philadelphia, Pa., for Gilbert Associates.

Charles S. Smith, Easton, Pa., David Sive, and R. C. Barrett, New York City, for Bushkill-Lower Lehigh Sewer Authority.

Preston Moritz, Nazareth, Pa., for Nazareth Nat. Bank.

Jane A. Moffitt, Allentown, Pa., for First Nat. Bank of Allentown.

John Molnar, Bangor, Pa., Gary N. Asteak, Easton, Pa., for Plainfield Tp.

Franklin VanAntwerpen, Easton, Pa., for Palmer Tp.

Thomas P. Stitt, Easton, Pa., for Stockerton (Bushkill member).

S. E. Stettz, Easton, Pa., for Easton Area Joint Sewer.

T. J. Oravetz, Chief Counsel, Philadelphia, Pa., for Pa. DER.

TROUTMAN, District Judge.

These consolidated cases were filed on October 26, 1977, invoking the jurisdiction of this Court under 28 U.S.C., §§ 1331 and 2201, to challenge a sewer grant made in February, 1977, by the Environmental Protection Agency, hereinafter sometimes called EPA, to the Bushkill-Lower Lehigh Joint Sewer Authority, hereinafter sometimes called the Sewer Authority, for the purpose of constructing a system of interceptor sewers in Northampton County, which sewers would discharge into the sewage treatment plant of the City of Easton.

The cases were filed by citizens groups located in Plainfield and Bushkill Townships, portions of which were to be included in the service area of the proposed sewer system.

The defendants, Douglas Costle and Jack Schramm, are the responsible officials of EPA. The challenges were predicated on alleged violations of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., and the Federal Water Pollution Control Act of 1972, 33 U.S.C. § 1251 et seq., reviewable under the standards of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., but these statutes do not create and were not alleged as creating jurisdiction. In this connection, see *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), in which the court held that the Administrative Procedure Act "is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."

A hearing on the plaintiffs' motion for preliminary injunction was scheduled for October 28, 1977. At that time, the Sewer Authority filed a motion to intervene as a defendant, which, after argument, was granted. Certain municipalities within the jurisdiction of the Sewer Authority also applied to intervene. These petitions were denied, but the applicants were granted amicus curiae status. At the same time, the named defendants, the EPA and the Sewer Authority, as intervenor, advised the Court that they did not deem it necessary or useful to immediately proceed with the scheduled hearing on the application for a preliminary injunction; rather, they proposed to the Court that they stipulate to take no further action on the project, and that a final hearing on the application for a permanent injunction be scheduled promptly. The plaintiffs being agreeable, the Court entered an order upon stipulation, and tentatively fixed November 21, 1977, as a trial date.

On November 21, 1977, the parties appeared before the Court in conference, at which time EPA stated that it was not ready for trial, while the plaintiffs stated that they were. The Sewer Authority requested an early trial listing, representing that its bids would expire in early 1978, whereas EPA requested a deferral till February 1, 1978. The Court set January 3rd, 1978, as the date for trial.

On December 23, 1977, having requested a conference with the Court, EPA advised the Court that it had tentatively determined to change its position, based on its further review of the project documents. EPA asked that the Court continue the trial, and proposed an investigation of the documents already in hand, which would require about a month, and thereafter anticipated a further study, the duration and nature of which was at that time unknown.

The plaintiffs agreed to EPA's request. The Sewer Authority opposed it, again asserting that its outstanding bids, which had been extended, would expire, after which, the Authority asserted, it might not be able to proceed with the project.

Considering that the defendant EPA, whose conduct was at issue, had represented that it could not immediately defend its action, considering the complexity of the matter, and considering the possibility, as suggested by EPA, that it might ultimately concede major portions of the allegations of the complaint, the concession of which the plaintiffs indicated would or may vitiate the need for a present trial of their remaining claims, and perhaps avoid trial completely, the Court granted the motion for a continuance. However, in view of the Authority's representations, the Court directed that EPA further advise the Court of the status of the matter and accordingly set a conference on February 3, 1978, for that purpose.

At the February 3, 1978 conference, EPA advised the Court that it had determined that its prior approval of the project without an environmental impact statement was or may have been based upon inaccurate and inadequate information, and that it had therefore decided to prepare an environmental impact statement, at least as to certain areas, to hold further project action in abeyance until such a statement could be prepared, with necessary public participation, fully considered, and ultimately filed in final form.

At the same time, February 3, 1978, the Authority presented to the Court a complex

motion, supported by some fifty pages of affidavits and brief, which it had earlier served upon other parties, and which it served upon the Court that very morning, and requested that the Court hold a hearing on the motion immediately. The Court declined to do so, and instead directed that the parties file briefs, and fixed oral argument thereon for February 28, 1978.

Because of the constant and unyielding pressures placed upon the Court to forthwith hear and immediately decide the highly controverted issues involved, we are foregoing today the luxury of a carefully written full-blown opinion, and are today deciding the case from the bench.

The Authority's motion seeks to void the stipulation entered into on October 29, 1977, as to itself and EPA, to supplement its Answer so as to assert a cross-claim or cross-claims against EPA, which cross-claim or cross-claims in principal part would allege the existence of the grant agreement as a contract, and would contend that EPA violated the contract without justification, by failing to continue to grant approvals and expend funds, and to defend this suit in good faith, and based thereon, to require EPA to process its grant "in accordance with the usual and customary practices and procedures," both by way of Mandamus and by way of preliminary and final injunction.

■ Initially, the Court believes that the Authority's consent to the stipulation may be properly withdrawn in the light of the state of the record. No claim has been asserted against the Authority, plaintiffs sought no relief against it, and assert no opposition. Since the Authority's consent was premised on the understanding that an early trial would be held, it is equitable that the Authority be released from its obligation and understanding. The Authority is, therefore, free to proceed with the sewer project. The practical issue involved is whether it can obtain EPA funds to help pay for the project, an issue which we shall later discuss.

However, no such consideration obtains with regard to EPA. Indeed, it in no way seeks relief from its stipulation. Nor is it

even clear that the Authority requests that EPA be relieved of its undertakings. No legal authorities are cited by the Sewer Authority to support any action by this Court to deprive plaintiffs of their stipulation with EPA. Accordingly, the stipulation as between EPA and plaintiffs will remain in effect, always subject, of course, to this Court's supervision, and to the Authority's rights against either party.

More important are the questions arising from the Authority's proposed cross-claim.

■ Before discussing the merits of the claim, the Court will consider whether it has jurisdiction to do so. As stated in *Foman v. Davis*, 371 U.S. 178, at 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), leave to amend or supplement should be freely granted where the amendment would state a facially valid claim. To avoid a two-step process involving this cross-claim with its attendant further complications, the Court will, therefore, consolidate the issue of amendment with the question whether facially sufficient claims are stated. In this connection, see the case of *Philadelphia Housing Authority v. American Radiator & S. S. C.*, 309 F.Supp. 1057, at 1063 and 1064 (E.D.Pa. 1969), wherein the then Chief Judge of this District stated: "Where leave to amend is sought to assert claims devoid of legal foundation, it should be denied." Likewise see *Holmes v. Henderson*, 145 F.Supp. 832, at 837 (D.C.Nev.1956), affirmed 249 F.2d 529 (9th Cir. 1957), *American Security Company v. Shatterproof Glass Corporation*, 166 F.Supp. 813, at 827, 268 F.2d 769 (3rd Cir. 1969), *Chapman v. Sheridan Wyoming Coal Company*, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 in 1950, and *U. S. v. Two Lots*, 30 F.R.D. 5 (E.D.Pa.1962).

■ For the reasons which follow, the Court concludes that the proposed claims are insufficient in law in that this Court has no jurisdiction to entertain them.

Importantly, in disposing of this motion, the Court has considered as true all of the factual allegations contained in the Authority's affidavits, including the allegations that the Authority has labored long and

hard and in good faith to achieve a solution to a real problem, that it and the EPA had entered into a valid contract and that EPA had intended to defend its action until late December, 1977, when it decided that it may have improperly approved the project, and that reconsideration is required; that some individuals at EPA had determined to issue further project approvals pursuant to the grant agreement, and that other individuals, presumably more senior, had determined not to issue such approvals, and that EPA has now breached the contract and in bad faith, refuses to defend this action.

Unfortunately for the Authority, these assumed facts do not in our opinion overcome the jurisdictional limitations incumbent on this Court. The Authority's claims must stand on their own; this Court cannot acquire jurisdiction over them by virtue of the plaintiffs having sued EPA, and the Authority having voluntarily intervened. See *United States v. Failla,* 120 F.Supp. 797, at 802 (D.C.N.J.1954), *affirmed,* 219 F.2d 212 (3rd Cir. 1955), where you will find the following very interesting language. Substituting "cross-claim" for "counterclaim" the following language used by the District Court is most interesting:

"The statutory jurisdiction of the Court cannot be extended by implication to include counterclaims which seek affirmative relief against the United States. It is well established that sovereign immunity extends not only to original claims but also to counterclaims which demand the entry of an affirmative judgment against the sovereign. The District Courts are without jurisdiction of such claims in the absence of a waiver of immunity."

Likewise see *Illinois Central Railway Company v. State P. U. C.,* 245 U.S. 493, at pages 504 and 505, 38 S.Ct. 170, 62 L.Ed. 425.

It is clear that the Authority's claims, both as stated in the proposed cross-claim, and by any independent analysis, ultimately constitute claims for money damages for breach of contract.

This may be observed by noting what relief would satisfy the Authority: It is the disbursement of the project grant. Nothing less would alleviate the Authority's concerns. It is even clear from the sources of the duty suggested by the Authority; namely, §§ 203(a) and (b) of the Federal Water Pollution Control Act, sometimes hereinafter referred to as FWPCA. In the Authority's words, they create a dual claim to "payments." Parenthetically, the Authority also requests that EPA be enjoined and mandamused to defend this action in good faith, but the sole basis for this claim is EPA's alleged contractual obligation, and the sole benefit to the Authority would again be the disbursement of the federal grant.

Finally, this may be seen by the fact that neither EPA nor plaintiffs are doing anything to prevent the Authority from proceeding with the project. Given relief from its voluntary stipulation, there is no restraint whatsoever upon the Authority other than the matter of finances.

As a claim against the United States arising out of an alleged breach of contract, the Authority's claim is subject to the ancient and well-accepted constitutionally founded doctrine of sovereign immunity. Pursuant to this doctrine, it is well established that the United States may not be sued without its consent. See *United States v. 3,317.39 Acres,* 443 F.2d 104 (8th Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675. Likewise see *Magnus v. U. S.,* 234 F.2d 673 (7th Cir. 1956), *cert. denied,* 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551. Indeed, consent to suit on contracts has been given, but it is normally limited to the Court of Claims under 28 U.S.C. § 1346(a)(2) and 1491. Clearly, under these sections, contract claims in excess of $10,000, of which the instant case is one, do not lie in this Court. Cases such as *Larson v. Domestic & Foreign Commerce Corporation,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) and *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940) illustrate this point.

Neither the Authority's proposed cross-claim nor its brief suggest any jurisdictional basis for its claim. However, in its reply

brief, the Authority alleges, for the first time, jurisdiction under § 505(a)(2) of the FWPCA, 33 U.S.C. § 1365(a)(2). While quoting this provision of the FWPCA, the Authority does not refer to the 60 day notice requirement of § 505(b)(2) of the Act, which precludes such suits unless 60 days prior notice has been given to the Administrator. This requirement has been implemented by regulation at 40 CFR, Section 135.1 et seq. There is no suggestion that the Authority has complied with this provision. Since the cross-claim must jurisdictionally stand on its own feet, this requirement must be satisfied by the Authority. The requirement is mandatory and bars this claim. See *Ventnor City v. Fri,* 6 ERC 2104 (D.C.N.J.1974), a photocopy of which was handed to the Court yesterday. Likewise see *Massachusetts v. U. S. Veterans Administration,* 541 F.2d 119 (1st Cir. 1976).

However, assuming that the Court had power to waive this mandatory requirement, we do not have jurisdiction under § 505(a)(2) because the Administrator's action is, in our opinion, discretionary. The grant agreement pertinent to the Authority's cross-claim shows that the Administrator's duty under the grant contract is specifically conditioned on compliance with all regulations, and the Administrator's determination of such compliance, which is what is involved here, is clearly, in our opinion, a discretionary act.

That the defendant's alleged duty is discretionary is immediately apparent from the Authority's proposed order, which would require the defendants to process the grant by the "usual customary practices and procedures" and to "defend the suit in good faith." Such orders would be so vague as to be virtually unenforceable, to say nothing of being susceptible of ministerial execution. The strategy for defense of a suit is clearly discretionary, see *Seiden v. United States,* 537 F.2d 867 (6th Cir. 1976), and the processing of a grant under the regulatory procedures set forth in 40 CFR, § 35.901 et seq., clearly involves substantial discretion. Here again see the case of *Sierra Club v. Train,* 9 ERC 1096 in 1975, a copy of which was handed to the Court yester-

day. Also see *Loveladies Property Owners Association v. Raab,* 430 F.Supp. 276 (D.C. N.J.1975).

The Authority's assertion that some EPA officials at one time intended to issue a certain approval denominated Part B, otherwise unexplained as to its significance or complexity, seems superficially to suggest the possibility of a non-discretionary action, but the Authority also asserts that other EPA officials decided not to issue the approval pending court action, thus making it clear that highly discretionary action was involved in enabling EPA to reach a conclusion. Moreover, the Authority does not allege that a decision to issue a Part B approval is a ministerial one.

*Sierra Club v. Train,* 9 ERC 1096, holding no jurisdiction under § 505(a)(2), involving the FWPCA, supports our conclusion. There, the Court held the EPA Administrator's decision not to take action under § 309(a)(3) of the Act was discretionary, although that Section requires that when he makes a given finding, he shall issue an order. As we interpret § 505(a)(2), in the framework of the FWPCA as a whole, it was intended, as its title indicates, to provide a remedy for citizens dissatisfied with EPA's regulatory actions, and we are loathe to stretch its language so as to amend the Tucker Act without some more explicit indication of Congressional intent. The Authority cites no legislative history to suggest that § 505 was intended to apply to suits for money damages by grantees of Title II grants, and the Court has not located any.

Neither the *State of Minnesota v. Callaway,* 401 F.Supp. 524 (D.C.) *reversed,* 543 F.2d 1198 (8th Cir. 1976), nor *NRDC v. Callaway,* 524 F.2d 79 (2nd Cir. 1975), support the Authority's interpretation. Both deal exclusively with the jurisdiction over regulatory actions, not with the grant and not with monetary damages.

Other statutes which expressly waive sovereign immunity are illustrative by contrast. In the disaster assistance program, for example, Congress provided that the

SBA Administrator might sue or be sued, with equity limitations. See *Murray v. Kleppe,* 424 F.Supp. 108 (M.D.Pa.1977). Such statutes suggest first that Congress is aware of its authority to waive sovereign immunity to permit suits generally in the district courts, and second, that when it does, it considers what limits it wishes to place on such waiver. Congress' expression here under the heading "Citizens suits" in the context presented cannot be fairly construed as such a waiver, and we, therefore, decline to so construe it.

■ The Authority's prayer for mandamus and injunctive relief in no way alters this conclusion. Injunctive relief is not available without jurisdiction, and asserted as a basis for jurisdiction, is inadequate. The Authority cannot rely on 28 U.S.C. § 1331 or § 2201, because these statutes do not waive sovereign immunity.

■ Contrary to the Authority's statement, plaintiffs' Complaint does not rely on the National Environmental Policy Act, the Federal Water Pollution Control Act, FWPCA, or the Administrative Procedure Act, APA, for jurisdiction, and with the exception created by § 505, none create any jurisdiction. See *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Since there is no basis for injunctive relief, the motion for preliminary injunction must necessarily fail.

In any event, the Authority, we believe, has an adequate remedy at law in the Court of Claims, and as it concedes, under normal equitable principles, it must show that its legal remedy is inadequate for equity to act. No such showing can be made, any more than in any other contract suit.

■ Also, it is established that sovereign immunity and the exclusive jurisdiction of the Court of Claims cannot be evaded by casting the claim as one for affirmative or mandatory injunctive relief. As long as the sovereign is acting within its statutory ambit, such affirmative injunctive relief is inappropriate. See *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and *Larson v. Domestic & Foreign Corporation,* heretofore cited.

The Authority argues that it would be entitled to relief here if the Tucker Act did not create jurisdiction in the Court of Claims and, from that premise, urges that its remedies should not be contracted by the Tucker Act, which Act provides only limited equitable relief, and, indeed, no equitable relief under the circumstances involved in these cases.

However, this argument misses the point, for it neglects the fact that in the absence of the Tucker Act, the Authority would have no basis for recovering money from the government and no amount of nonmonetary orders could sustain its position. The Tucker Act gives the Authority its only remedy, since there is no right to a grant absent a Congressional declaration.

The mandamus demand would confer jurisdiction on this Court under 28 U.S.C. § 1361, but for the fact that a mandamus applicant must show on the face of his complaint that the action sought is one to which he is clearly entitled, is ministerial, can be provided by the defendant, and that relief is unavailable by any other remedy. See *Mattern v. Weinberger,* 519 F.2d 150 (3rd Cir. 1975), *Grant v. Hogan,* 505 F.2d 1220 (3rd Cir. 1975).

In the absence of the necessary requisites for the writ, there is no mandamus jurisdiction. Here attention is called to the case of *Johnson v. County of Chester,* 413 F.Supp. 1299 (E.D.Pa.1976) and *Davis Associates, Inc. v. HUD,* 498 F.2d 385 (1st Cir. 1974).

It is unnecessary for us to dwell on all of the requisites to mandamus jurisdiction. We focus on two, and we find that there is an alternate remedy, and that the defendant's duty, if any, is not ministerial. The alternate remedy is, of course, in the Court of Claims. Interestingly, the Authority, in its reply brief and in oral argument, concedes the availability of the Court of Claims. This in itself is a bar to equity jurisdiction.

Moreover, both as to mandamus and injunctive claims, we note that as in *Carter v. Seamans,* 411 F.2d 767 (5th Cir. 1969), *cert.*

**28**

denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), the Courts should look askance at any suit which seeks to avoid the Court of Claims remedy by requesting equitable relief. The Authority's references to the amendments to 28 U.S.C. § 1331 and 5 U.S.C. § 702 are thus misplaced. Both amendments, we think, make it clear on their face that they are designed to provide remedies where none exist, and nothing suggests that they were intended to modify the Tucker Act, or to provide monetary damages in contract actions in this Court.

Where the suit basically seeks money, as does the Authority's proposed cross-claim, the intermediate steps to get that money do not govern the character of the action.

We conclude that, upon amendment, we would be without jurisdiction to entertain the Authority's cross-claims, and, therefore, deny the Motion for Leave to Amend or Supplement the Answer.

The Court is reluctant to unconditionally accept the Authority's dire predictions that total disaster is around the corner, since the life of the project has been extended in the past. Presumably, if the project is as necessary and important as asserted, it will in due course be constructed. We cannot assume that the passage of time will substantially affect its viability, and there is no reason to suppose that it will be so affected in the future.

In so stating, the Court is not unaware of the basis for the concerns of the Authority. We recognize that financing, the matter of grants, sources of funding, by bond or otherwise, substantially depends in this modern day of government upon grants, sometimes both Federal and State. And so we understand the deep concern and apparent frustrations of the Authority members and their advisors, who are obviously in this case so well motivated. This Court is often, indeed usually, confronted with parties who have acted in good faith and have done what they strongly believe to be right, and the Court does not doubt that such is the case here.

However, as governmental officials themselves, the Authority members should un-

derstand that in our government, powers and duties are allocated, and no government official is authorized to exceed his jurisdiction. Congress, in its wisdom, waived the sovereign immunity of the United States on contract claims over $10,000 only insofar as the Court of Claims is concerned. This Court must respect that limitation.